UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

ALEXIS ABRAHAM,

                                    Plaintiff,

                 -against-

P. HENDEL PRODUCTS PARTNERSHIP d/b/a
MCDONALD'S, NICOLA ADAMS, AALIYAH ADAMS,
STEFON BARLOW, ROCIO APONTE, CATYH
LUCERO, BAKHMINA JABARKHIL and SANDRA
"DOE" (the true last name unknown),

                               Defendants.

**COMPLAINT**

Jury Trial Demanded

--------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

       1.  Plaintiff, a 19 year-old college student studying nursing, brings this action

against defendants -- her former employer and supervisors at a McDonald's franchise in

Brooklyn-- alleging hostile work environment harassment based on gender and race, gender

discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981; the New York State Human

Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); the New York City Human Rights Law,

N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"); the Gender Motivated Violence Act, N.Y.C.

Admin. Code §§ 8-901, *et seq.* ("GMVA"); the City of New York's Fair Workweek Law, N.Y.C.

Admin. Code §§ 20-1201 to 20-1275; and New York common law.  Plaintiff seeks compensatory

and punitive damages, attorney's fees and costs, and such other and further relief as the Court

deems just and proper.

## JURISDICTION & VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this action asserts violations of Title VII and 42 U.S.C. § 1981, and therefore raises federal questions regarding the deprivation of plaintiff's rights.

3.  Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide her New York State and New York City claims, which form part of the same case and controversy as plaintiff's federal claims under Article III of the United States Constitution.  In connection with plaintiff's City Human Rights Law claims, a copy of the complaint was provided to the New York City Commission on Human Rights and the Corporation Counsel of the City of New York.

4.  Venue is proper in the Easter District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because defendants are located in this District and the incident in question occurred in this District.

## JURY TRIAL

5.  Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## ADMINISTRATIVE REQUIREMENTS

6.  Plaintiff timely filed an administrative complaint of discrimination and retaliation with the New York State Division of Human Rights ("SDHR"), which was dual filed with the Equal Employment Opportunity Commission ("EEOC").

7.  The EEOC issued plaintiff a right to sue letter on March 10, 2022, allowing her to bring suit within 90 days of her receipt of the letter.

## PARTIES

8.  Plaintiff is a resident of the State of New York, County of Kings.  Plaintiff is a 19 year-old White female.

9.  P. Hendel Products Partnership ("Hendel") owns and operates a McDonald's restaurant franchise, located at 35-40 Nostrand Avenue in Brooklyn, New York.  According to Dun & Bradstreet, Hendel has 901 total employees across all of its locations and generates $25.44 million in sales (USD).  There are 8 companies in the P. Hendel Products Partnership corporate family.  The principal of the company is Paul Hendel.

10.  At all relevant times, Nicola Adams was the General Manager, Aaliyah Adams was a shift supervisor, and Stefon Barlow was a shift manager at the McDonald's, where plaintiff was employed.  Rocio Aponte, Catyh Lucero, Bakhmina Jabarkhil and Sandra "Doe" were also plaintiff's supervisors and/or managers.  Because these individuals are managers and supervisors, their discriminatory and retaliatory conduct are imputed to Hendel.

## STATEMENT OF FACTS

11.  Plaintiff is a 19 year-old White female college student studying nursing.  Plaintiff worked as a crew member at a McDonald's restaurant franchise owned and operated by Hendel from March 6, 2020 to July 10, 2021, located at 35-40 Nostrand Avenue, Brooklyn, New York.

12.  At all relevant times, plaintiff performed her duties in a satisfactory manner and was qualified for her position.  Defendants acknowledged this in their Position Statement submitted to the SDHR.

13.  During her employment, plaintiff was consistently and frequently subjected to a hostile work environment and employment discrimination based on sex and race by the

3

restaurant's managers and supervisors.  When plaintiff complained to these managers and supervisors, the harassment continued and even increased.

14.  Plaintiff orally complained to *other* managers and supervisors about this mistreatment, but the response was indifference and no action was taken.  The supervisors and managers to whom plaintiff complained had witnessed the discrimination and sexual harassment directed toward plaintiff and other employees, but no corrective action was taken.

15.  Instead, plaintiff was subjected to continuous and even increased retaliation by her harassers who were emboldened by the fact that no one intervened.  Other employees had complained about being subjected to discriminatory treatment themselves and nothing substantive was done to address it.

16.  From March 6, 2020 to September 2020, plaintiff was the only employee who was a White female.

17.  Beginning on or about July 2020, through July 2021, plaintiff's shift manager Stefon Barlow, a Black man, repeatedly referred to plaintiff as "White girl."  Further, Barlow frequently sexually harassed plaintiff by asking her questions regarding her dating preferences and whether she dated Black men.

18.  Barlow persisted asking plaintiff these harassing questions while the restaurant was busy causing plaintiff even more psychological stress and anxiety.

19.  In addition, Barlow would often touch plaintiff on her shoulders and back for the purpose of making gratifying physical contact with her.  This occurred approximately 10 times.  Plaintiff complained to Barlow about his unwanted mistreatment, but it continued.  Moreover, Barlow referred to another White co-worker of plaintiff's, Olivia Ross, as "White

girl." Barlow's discriminatory mistreatment was motivated by plaintiff's race, gender and her complaints that he cease his illegal behavior.

20.   General manager Nicola Adams, who is Black, subjected plaintiff to a sexually and racially hostile work environment and discriminatory treatment throughout plaintiff's employment.  Adams would often shout or scream at plaintiff while the restaurant was busy with customers but did not treat plaintiff's co-workers who were not White in this manner.  On several occasions, Adams referred to plaintiff as "little White girl."  Some customers who witnessed Adams' mistreatment told plaintiff to report Adams.

21.   Further, on at least two occasions, Adams violated plaintiff by slapping her on the buttocks, which is a crime under the New York Penal Law.  The most recent time this occurred was May or June 2021.

22.   On or about June or July 2020, Adams refused to discuss employment policies which plaintiff had inquired about, and stated to plaintiff that she was "tired of dealing with [her] stupid questions."  The employee handbook that defendants provided to the SDHR with its Position Statement states that the general manager is responsible for dealing with these types of issues.

23.   Plaintiff's non-white co-workers, like Elissa Perri, Titilope Jeje, Shania, Aaliyah Adams, Samayah, Jadeni, Ada Rodriguez, and others received preferential treatment from Adams.  Adams would not yell at them or embarrass them while they were working.  In fact, Adams would actually laugh along with the non-White employees and be friendly with them.  When it came to plaintiff, Adams would always dismiss her and attempt to intimidate her from ever asking her any work-related questions.

24.   The restaurant's employee handbook (§ 4.1) states that the general manager is responsible for dealing with scheduling issues.  Plaintiff asked Adams several times for an application for sick leave pay and was told to "shut the fuck up" or was ignored.  Because Adams refused to assist her, plaintiff went to Adams' supervisor, Jaira Mowla, regarding the sick leave.  When Adams found out, Adams said to plaintiff in a very threatening and intimidating tone to "never go above her head to her supervisor."  Plaintiff unjustifiably lost 8 hours of sick leave while employed at the restaurant.

25.   In contrast to the non-White employees, Adams also required plaintiff to provide a doctor's note whenever she was sick.

26.   Further, Adams scheduled plaintiff to work days and shifts that plaintiff had previously indicated she was  not available.  Adams also made plaintiff work past 10:00 p.m. when she was 17 years-old, which is illegal under New York Labor Law § 143 (Labor Law § 143 (Consol., Lexis Advance through 2022 released Chapters 1-55, 57-184)).  When plaintiff told Adams in 2020 that she wanted to work mornings, Adams said that she "didn't like me working mornings" and continued to schedule plaintiff for evening shifts between 4:00 p.m. and 12:00 a.m.  Plaintiff had just started her freshman year at college and working evenings consistently every week left plaintiff sleep deprived and almost threatened her academic performance in the nursing program.  Plaintiff's tuition scholarship depended on her maintaining a B+ average, so she had to juggle night shifts unnecessarily with her coursework.  Adams and Hendel also did not pay plaintiff a premium for schedule changes.

27.   The above also violated the City of New York's Fair Workweek Law, which was enacted in 2017.  *See* N.Y.C. Admin. Code §§ 20-1201 to 201263.  This law, which expressly allows for a private cause of action, expanded wage and hour protections for

employees working at fast food businesses in the City.  Under the law, fast food employers in the City:

- Must give workers regular schedules that stay the same week-to-week

- Must give workers work schedules 14 days in advance of the start of the schedule

- Must pay premiums for schedule changes or clopenings (an employee working a closing shift and a subsequent opening shift)

- Must give workers a chance to say no to extra work or to clopenings

- Must give current workers the opportunity to work more regular hours before hiring new employees

- Cannot fire or reduce the hours of a worker by more than 15% without just cause or a legitimate business reason.

28.  In a further attempt to ridicule and harass plaintiff for discriminatory reasons, Adams referred to plaintiff by a male name, Alex, despite plaintiff's frequent requests to be called by her correct name, Alexis.

29.  In addition, plaintiff overheard Adams told plaintiff's co-worker, Brandon Molina, who is Hispanic, to "speak English; this is America."

30.  Adams' misconduct was motivated by plaintiff's race, gender and complaints of discrimination.

31.  Knowing that discrimination was permitted in the workplace, Aaliyah Adams, who is Nicola's daughter and a shift manager, made fun of the way plaintiff spoke and acted, meaning that plaintiff  spoke and acted "White," and insulted plaintiff with statements such as "you're so White!"  She also made negative comments about Whites, like saying "ditzy White girls," to plaintiff and her White co-workers Olivia Ross and Amira Rakhmatova.  Both Nicola and Aaliyah Adams also called plaintiff's White co-worker, Michael Robb, "White boy," until his resignation in March 2021.  They would also harass Robb by unnecessarily rushing him

7

when he was working the drive-thru window.  Further, Nicola and Aaliyah Adams mocked the way the Asian women hired in May 2021 spoke.

32.   On or about January or February 2021, another manager, Rocio Aponte, a Hispanic woman, apparently determining that this was an appropriate thing to do to a woman, especially one who is White, tied plaintiff down to the drive-thru ordering station by plaintiff's apron straps.  Plaintiff was taking orders and assembling the orders at the same time.  Aponte wanted plaintiff to remain in place at the station and restrained her so she could not move. Aponte also unjustifiably bad mouthed plaintiff in Spanish to plaintiff's Hispanic co-workers and would yell at plaintiff, use profanity toward her and demean her.  One time when plaintiff was mopping the restroom, Aponte ripped plaintiff's mop away from her and yelled "that's not how you fucking do it!"  Aponte would also frequently call plaintiff slow and stupid and say "What's wrong with you?" Aponte did not treat the non-White employees this way.

33.   Plaintiff's co-workers often asked her how she was able to withstand the way she was being treated.  Plaintiff told them she wanted to go to Human Resources, but the co-workers advised her not to saying that Human Resources was not effective and that it would backfire and plaintiff would be targeted or fired.

34.   All or most of the aforesaid misconduct took place in front of other managers and supervisors, including Catyh Lucero, Bakhmina Jabarkhil, and Sandra "Doe," but they did nothing to remedy the situation.  Plaintiff felt isolated and helpless.

35. On or about July 10, 2021, plaintiff was constructively discharged.  No reasonable employee could have been expected to ensure the discriminatory and retaliatory abuse, which was both verbal and physical, and which affected the terms and conditions of plaintiff's employment.  Plaintiff informed Nicola Adams' supervisor, Jaira Mowla, that the

reason she had to leave was the discriminatory conduct, the mental anguish it caused, and the fact that no manager intervened despite observing and knowing of the mistreatment.  The employee handbook that the defendants provided to the SDHR with its Position Statement states "[a]ny employee at the shift manager level or higher that observes retaliatory, harassing, or discriminatory conduct as described above must report the conduct to the General Manager, Human Resources Director, or Owner-Operator, so that an investigation can be made and corrective action taken, if appropriate.  Failure to do so may result in disciplinary action up to an including termination."  All of the defendants violated this internal rule.

36.  As a result of the defendants' actions, plaintiff suffered emotional distress, fear, embarrassment, humiliation, disgust, an invasion of privacy, physical pain from being slapped by Nicola Adams' on the buttocks, and financial loss.

## FIRST CLAIM

**(Hostile Work Environment, Sexual Harassment and Gender Discrimination under Title VII of the Civil Rights Act of 1964)**

**(Against Defendant Hendel)**

37.  Plaintiff repeats the foregoing allegations.

38.  Defendant Hendel discriminated against plaintiff on the basis of her sex, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by its managers and supervisors based on her sex.  Defendant also treated plaintiff differently concerning the terms and conditions of her employment based on her sex. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel.

39.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

40.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

**(Hostile Work Environment and Race Discrimination under Title VII of the Civil Rights Act of 1964)**

**(Against Defendant Hendel)**

41.  Plaintiff repeats the foregoing allegations.

42.  Defendant Hendel discriminated against plaintiff on the basis of her race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by its managers and supervisors based on her race.  Defendant also treated plaintiff differently concerning the terms and conditions of her employment based on her race. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel.

43.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

44.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

**(Retaliation under Title VII of the Civil Rights Act of 1964)**

**(Against Defendant Hendel)**

10

45.  Plaintiff repeats the foregoing allegations.

46.  Defendant Hendel retaliated against plaintiff through continued and increased harassment by its managers because plaintiff engaged in the protected activity of complaining about gender and race discrimination.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to Hendel.

47.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

48.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

### FOURTH CLAIM

**(Hostile Work Environment and Race Discrimination under 42 U.S.C. § 1981)**

**(Against all Defendants)**

49.  Plaintiff repeats the foregoing allegations.

50.  Defendants discriminated against plaintiff on the basis of her race, in violation of 42 U.S.C. § 1981, by participating in, creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff based on her race.  Defendants also treated plaintiff differently concerning the terms and conditions of her employment based on her race.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well under § 1981.

51.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

11

52.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (Retaliation under 42 U.S.C. § 1981)

### (Against All Defendants)

53.  Plaintiff repeats the foregoing allegations.

54.  Defendants retaliated against plaintiff through continuous and increased harassment because plaintiff engaged in the protected activity of complaining about race discrimination.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well under § 1981.

55.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

56.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CLAIM

### (Hostile Work Environment, Sexual Harassment and Gender Discrimination under the NYSHRL)

### (Against all Defendants)

57.  Plaintiff repeats the foregoing allegations.

58.  Defendants discriminated against plaintiff on the basis of her sex, in violation of the NYSHRL, by participating in, creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by managers and supervisors based on her sex.  Defendants also

treated plaintiff differently concerning the terms and conditions of her employment based on her sex. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well for their own misconduct and/or for aiding and abetting discrimination.

59.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

60.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

**SEVENTH CLAIM**

**(Hostile Work Environment and Race Discrimination under the NYSHRL)**

**(Against all Defendants)**

61.  Plaintiff repeats the foregoing allegations.

62.  Defendants discriminated against plaintiff on the basis of her race, in violation of the NYSHRL, by participating in creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by managers and supervisors based on her race.  Defendants also treated plaintiff differently concerning the terms and conditions of her employment based on her race.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well for their own misconduct and/or for aiding and abetting discrimination.

63.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

64.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM

### (Retaliation under the NYSHRL)

### (Against all Defendants)

65.  Plaintiff repeats the foregoing allegations.

66.  Defendants retaliated against plaintiff, in violation of the NYSHRL, through continued and increased harassment, because plaintiff engaged in the protected activity of complaining about gender and race discrimination.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well for their own misconduct and for aiding and abetting retaliation.

67.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

68.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## NINTH CLAIM

### (Hostile Work Environment, Sexual Harassment and Gender Discrimination under the NYCHRL)

### (Against all Defendants)

69.  Plaintiff repeats the foregoing allegations.

70.  Defendants discriminated against plaintiff on the basis of her sex, in violation of the NYCHRL, by participating in creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by managers and supervisors based on her sex.  Defendants also

14

treated plaintiff differently concerning the terms and conditions of her employment based on her sex. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel. The individual defendants are liable as well for their own misconduct and for aiding and abetting discrimination.

71. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

72. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## TENTH CLAIM

### (Hostile Work Environment and Race Discrimination under the NYCHRL)

### (Against all Defendants)

73. Plaintiff repeats the foregoing allegations.

74. Defendants discriminated against plaintiff on the basis of her race, in violation of the NYCHRL, by participating in creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of plaintiff by managers and supervisors based on her race. Defendants also treated plaintiff differently concerning the terms of her employment based on her race. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to Hendel. The individual defendants are liable as well for their own misconduct and for aiding and abetting discrimination.

75. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

76.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## ELEVENTH CLAIM

### (Retaliation under the NYCHRL)

### (Against all Defendants)

77.  Plaintiff repeats the foregoing allegations.

78.  Defendants retaliated against plaintiff, in violation of the NYCHRL, through increased harassment, because plaintiff engaged in the protected activity of complaining about gender and race discrimination.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to Hendel.  The individual defendants are liable as well for their own misconduct and for aiding and abetting retaliation.

79.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

80.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## TWELFTH CLAIM

### (Gender-Motivated Violence Pursuant to the NYC GMVA)
### (Against Defendants Nicola Adams & Hendel)

81.  Plaintiff repeats the foregoing allegations.

82.  Nicola Adams' act of slapping plaintiff on her buttocks at work on two occasions, in conjunction with calling plaintiff "White girl" and a male's name, Alex, instead of Alexis, as plaintiff requested, constituted a crime of violence motivated by gender in violation of the NYC GMVA.

83.  Because Adams was acting within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Adams' conduct.

84.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

85.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRTEENTH CLAIM

**(Violation of the City of New York Fair Workweek Law)**
**(Against Defendants Nicola Adams & Hendel)**

86.  Plaintiff repeats the foregoing allegations.

87.  Nicola Adams' misconduct in terms of plaintiff's work schedule violated the City's Fair Workweek Law.  Because Adams was acting within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Adams' conduct.

88.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

89.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTEENTH CLAIM

**(Assault and Battery)**
**(Against Defendants Nicola Adams & Hendel)**

90.  Plaintiff repeats the foregoing allegations.

91.  Nicola Adams' misconduct in terms of striking plaintiff on the buttocks on two occasions, without plaintiff's consent and in an offensive manner, constituted assault and

battery under New York law.  Because Adams was acting within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Adams' conduct.

92.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

93.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTEENTH CLAIM

**(Intentional Infliction of Emotional Distress)**
**(Against Defendants Nicola Adams & Hendel)**

94.  Plaintiff repeats the foregoing allegations.

95.  Nicola Adams' misconduct toward plaintiff as a whole constituted the intentional infliction of emotional distress under New York law.  Because Adams was acting within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Adams' conduct.

96.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

97.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTEENTH CLAIM

**(Assault and Battery**
**(Against Defendants Stefon Barlow & Hendel)**

98.  Plaintiff repeats the foregoing allegations.

99.  Stefon Barlow's misconduct in terms of repeatedly touching plaintiff in an offensive manner without plaintiff's consent constituted assault and battery under New York

law.  Because Barlow was acting within the scope of his employment when she engaged in these acts, Hendel is vicariously liable for Barlow's conduct

100.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

101.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTEENTH CLAIM

**(Intentional Infliction of Emotional Distress)**
**(Against Defendants Stefon Barlow & Hendel)**

102.  Plaintiff repeats the foregoing allegations.

103.  Stefon Barlow's misconduct toward plaintiff as a whole constituted intentional infliction of emotional distress under New York law.  Because Barlow was acting within the scope of his employment when he engaged in these acts, Hendel is vicariously liable for Barlows' acts.

104.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

105.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## EIGHTEENTH CLAIM

**(Intentional Infliction of Emotional Distress)**
**(Against Defendants Aaliyah Adams & Hendel)**

106.  Plaintiff repeats the foregoing allegations.

107.  Aaliyah Adams' misconduct toward plaintiff as a whole constituted intentional infliction of emotional distress under New York law.  Because Adams was acting

19

within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Adams' conduct.

108.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

109.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## NINTEENTH CLAIM

**(Assault and Battery)**
**(Against Defendants Rocio Aponte & Hendel)**

110.  Plaintiff repeats the foregoing allegations.

111.  Rocio Aponte's misconduct in terms of violently pulling a mop out of plaintiff's hands, while scolding her, and tying plaintiff to her work station, both of which were offensive and without plaintiff's consent, constituted assault and battery under New York law. Because Aponte was acting within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Aponte's conduct.

112.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

113.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## TWENTIETH CLAIM

**(Intentional Infliction of Emotional Distress)**
**(Against Defendants Rocio Aponte & Hendel)**

114.  Plaintiff repeats the foregoing allegations.

115.  Rocio Aponte's misconduct toward plaintiff as a whole constituted intentional infliction of emotional distress under New York law.  Because Aponte was acting

within the scope of her employment when she engaged in these acts, Hendel is vicariously liable for Aponte's conduct.

116.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

117.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

a.      Compensatory damages in an amount to be determined by a jury;

b.      Punitive damages in an amount to be determined by a jury;

c.      Attorney's fees and costs;

d.      Prejudgment and other lawful interest;

e.      Such other and further relief as the Court may deem just and proper.

DATED:  May 18, 2022

*Richard Cardinale*
_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1507
Brooklyn, New York 11242
(718) 624-9391
richcardinale@gmail.com